**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| **OPHELIA BLACKMON** | * | **CIVIL ACTION NO. 11-1509** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT & RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

**Background & Procedural History**

Ophelia Blackmon protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on November 10, 2008. (Tr. 12, 87-91). She alleged disability (amended) as of September 10, 2007, because of pain and swelling in her legs, high blood pressure, diabetes, and "fluid." (Tr. 25, 112, 147). The claims were denied at the initial stage of the administrative process. (Tr. 48-54). Thereafter, Blackmon requested and received a May 7, 2009, hearing before an Administrative Law Judge ("ALJ"). (Tr. 22-47). However, in a November 4, 2009, written decision, the ALJ determined that Blackmon was not disabled under the Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to other work that exists in significant numbers

in the national economy. (Tr. 9-20). Blackmon appealed the adverse decision to the Appeals Council. On July 15, 2011, however, the Appeals Council denied Blackmon's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On August 18, 2011, Blackmon sought review before this court. Succinctly restated, she contends that the ALJ erred in her step five analysis, and thus, her determination is not supported by substantial evidence.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program

throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

> (1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.
>
> (2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.
>
> (3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Blackmon had not engaged in substantial gainful activity during the relevant period. (Tr. 14). At step two, she found that Blackmon suffers severe impairments of mild osteoarthritis of the right knee; hypertension; diabetes mellitus; and obesity. *Id*. She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 14-15).

### II. Residual Functional Capacity

The ALJ next determined that Blackmon retained the residual functional capacity to perform light work, reduced by the ability to only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. (Tr. 16).[1] She also experienced a complete inability to climb

[1] Light work contemplates:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it

ladders, ropes, and scaffolds. *Id*.

Plaintiff does not challenge the ALJ's residual functional capacity assessment ("RFC"). Moreover, the RFC is supported by substantial evidence. *See* Tr. 187-189.

**III. Steps Four and Five**

The ALJ determined at step four of the sequential evaluation process that plaintiff could not return to her past relevant work as a home health aide because it was performed at the medium exertional level. (Tr. 17). Accordingly, she proceeded to step five. At this step, the ALJ determined that plaintiff was an individual of advanced age, with a limited education, and with transferrable work skills from her past relevant work. (Tr. 17-20). With the assistance of a vocational expert, the ALJ identified transferrable skills of "communication with the elderly; observing difficulty; light cooking; housekeeping chores; and keeping small records." (Tr. 17, 40-42). The vocational expert opined that these skills would transfer to the position of companion, Dictionary of Occupational Titles Code 309.677-010, with 497,556 jobs nationally and 8,851 jobs in Louisiana. (Tr. 39-42, 18). Because plaintiff was unable to perform the full range of light work, the ALJ relied upon the medical-vocational guidelines as a framework to conclude that she was not disabled pursuant to Rule 202.03. 20 C.F.R. § 404.1569; Rule 202.03, Table 2, Appendix 2, Subpart P, Regulations No. 4. (Tr. 19-20).

---

> requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Plaintiff contends that the ALJ erred insofar as she purported to rely upon vocational expert testimony to circumvent a finding of disabled that was otherwise mandated by application of the medical-vocational guidelines. Plaintiff correctly sets forth the rule that

> [w]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone . . .

Rule 200.00(e)(2), Table 2, Appendix 2, Subpart P, Regulations No. 4.

Thus, if plaintiff retained the residual functional capacity for the full range of light work, and the guidelines dictate a finding of disabled, then further consultation with a vocational expert to establish the ability to adjust to other work would be precluded.

Applying the foregoing principle here, the court observes that given plaintiff's RFC and vocational factors, the medical-vocational guidelines would compel a finding of disabled *unless* she had skilled or semi-skilled skills that were transferrable to other work. *See* Rules 202.01-202.03. Of course, that it was the ALJ found in this case.

Plaintiff contends that the ALJ's analysis ran afoul of Rule 202.00(c), which states that

> for individuals of advanced age who can no longer perform vocationally relevant past work and . . . who have only skills that are *not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity* . . . the limitations in vocational adaptability represented by a functional restriction to light work warrant a finding of disabled.

Rule 202.00(c), Appendix 2, Subpart P, Regulations No. 4 (in pertinent part) (emphasis added).

Plaintiff argues that the single occupation identified by the vocational expert, as relied upon by the ALJ, does not represent a *significant range of work*, notwithstanding the incidence of such work available in the national and regional economies.

To support her argument, plaintiff relies upon the Ninth Circuit's decision in *Lounsburry v. Barnhart*, 468 F.3d 1111, 1117 (9th Cir. 2006). In *Lounsburry*, the Ninth Circuit held that the

"significant range of . . . work" referenced in Rule 202.00(c) requires a significant number of occupations, and that the vocational expert's identification of the single occupation of companion (despite the availability of significant numbers of such work in the economy) did not suffice. *Id.* This court's own research has not uncovered any other circuit court decisions that contemplate this issue. Moreover, the Commissioner did not address this aspect of *Lounsburry* in his brief, or otherwise attempt to distinguish it.

The court observes that the claimant in *Lounsburry* enjoyed a high school education, whereas, in this case, the claimant had a limited education. Thus, here, Rule 202.03 is potentially at issue, versus Rule 202.07 in *Lounsburry*. In addition, the footnote to Rule 202.03 references Rule 202.00*(f)*, rather than Rule 202.00*(c)*. *See* Table 2, Appendix 2, Subpart P, Regulations No. 4. Nonetheless, nothing in Rule 202.00(c) limits its scope to high school graduates or their equivalent. Furthermore,

> [t]he presence of acquired skills that are readily transferable to a *significant range of semi-skilled or skilled work* within an individual's residual functional capacity would ordinarily warrant a finding of not disabled regardless of the adversity of age, or whether the individual's formal education is commensurate with his or her demonstrated skill level. The acquisition of work skills demonstrates the ability to perform work at the level of complexity demonstrated by the skill level attained *regardless of the individual's formal educational attainments*.

Rule 202.00(e), Appendix 2, Subpart P, Regulations No. 4 (emphasis added).

In short, the court does not discern any cognizable basis to distinguish *Lounsburry*'s interpretation of Rule 202.00(c), merely because the instant claimant had a limited education. If anything, a claimant with a limited education should have an even more difficult time adjusting to other skilled or semi-skilled work than a claimant with a high school education.

The court finds further support for plaintiff's argument in the applicable Social Security

Rulings.[2] According to Social Security Ruling 82-41,

> [w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and *specific occupations* to which the acquired work skills are transferable must be cited in the . . . ALJ's decision. Evidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy should be included (the regulations take administrative notice only of the existence of unskilled sedentary, light, and medium jobs in the national economy).

SSR 82-41, TITLES II AND XVI: WORK SKILLS AND THEIR TRANSFERABILITY AS INTENDED BY THE EXPANDED VOCATIONAL FACTORS REGULATIONS EFFECTIVE FEBRUARY 26, 1979. (emphasis added).

Furthermore,

> [w]hile there is no requirement to cite unskilled occupations where the criteria of a rule are met, specific examples of skilled or semiskilled *occupations* will be cited where a rule determines that a work adjustment above the unskilled level is expected.

SSR 83-10, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK--THE MEDICAL-VOCATIONAL RULES OF APPENDIX 2. (emphasis added).

Finally, it makes sense that the regulations require that skills be transferable to a significant range of work for an individual of advanced age because

> [g]enerally, the greater the degree of acquired work skills, the less difficulty an individual will experience in transferring skills to other jobs except when the skills are such that they are not readily usable in other industries, jobs and work settings. Reduced residual functional capacity (RFC) and advancing age are important factors associated with transferability because reduced RFC limits the number of jobs within an individual's physical or mental capacity to perform, and *advancing age decreases the possibility of making a successful vocational adjustment*.

SSR 82-41 (citing 20 C.F.R. §§ 404.1568(d)(1)-(4)) (emphasis added).

Indeed, the regulations acknowledge that advanced age significantly affects ability to transfer to

---

[2] Although social security rulings are not binding on the federal courts, they are "binding on all components of the Social Security Administration." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); 20 C.F.R. § 402.35 (b)(1). The Fifth Circuit frequently relies upon the rulings in evaluating the Commissioner's decisions. *Myers, supra* (citations omitted).

other work. 20 C.F.R. § 404.1563(e).

In sum, in the absence of evidence that plaintiff's acquired skills from her past relevant work are readily transferrable into a significant range of other work (i.e., at least several other identified occupations), the court is compelled to find that the ALJ's step five determination that plaintiff is not disabled under the framework of Medical-Vocational Rule 202.03 is not supported by substantial evidence. *See Lounsburry, supra*.

Plaintiff urges the court to enter a judgment awarding benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).

The instant record is not so disposed. The vocational expert was not asked at the hearing whether plaintiff's skills would transfer readily into a significant range of other occupations. Thus, this possibility is not foreclosed upon remand. Nevertheless, it is a close question in the first instance whether the skills learned by Ms. Blackmon from her past relevant work are the type of skills that would give her a vocational advantage over an unskilled person. *See* SSR 82-41.[3] This issue may be explored further upon remand.

---

[3] In other recent cases before this court, the same vocational expert opined that a claimant with no transferrable skills was able to make an adjustment to the semi-skilled position of companion. *See e.g., Lincoln v. Astrue*, Civil Action No. 10-1861 (W.D. La.).

**Conclusion**

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers at Monroe, Louisiana, this 11th day of July 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE